

IN THE UNITED STATES DISTRICT COURT
OF THE NORTHEN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| DONALD HENRY & <br> LISA NELL HENRY, AS <br> GUARDIANS OF B.M. <br> AN ADULT WARD, <br>     PLAINTIFFS, <br><br> VS. <br><br> NORTH TEXAS STATE HOSPITAL, <br> JORDAN LONG, <br> LANELL EDMONDES & <br> SARAH CARMICHAEL <br>     DEFENDANTS | § § § § § § § § § § § § § §  <br><br><br> CAUSE NO. 7:12-CV-198-O |

## COMPLAINT

Plaintiffs, DONALD E. HENRY and LISA NELL HENRY bring this case as Guardians of the person and estate of B.M., an adult ward, against the NORTH TEXAS STATE HOSPITAL ("NTSH"), Jordan Long ("LONG"), Lanell Edmonds ("EDMONDS"), and Sarah Carmichael ("CARMICHAEL") for violating B.M.'s rights under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and under 42 U.S.C. §§1983 and 1988 for violation of B.M.'s First and Fourteenth Amendment Rights under the United States Constitution and would show:

### JURISDICTION AND VENUE

1. This court has original jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343 since Plaintiff is suing for relief under 42 U.S.C. §§1983, 1988 and 12131.

2. Venue is appropriate in the United States District Court, Northern District of Texas, Wichita Falls Division, since Defendant North Texas State Hospital is located in the division and

Defendants Long, Edmonds, and Carmichael are residents in such division and the events that made the basis of this cause of action occurred in such division.

## PARTIES

3   Plaintiff B.M., *non compos mentis,* is a United States citizen, involuntarily committed to the Mexia State Hospital, Mexia, Texas by order of the 78th District Court of Wichita County, Texas. At all relative times, B.M. was and still is a qualified individual with multiple disabilities under Section 504 and Title II of the ADA.

4.   Plaintiffs Donald E. Henry, B.M.'s step-father, and Lisa Nell Henry, B.M.'s mother, are Guardians of B.M.'s person and estate and are jointly referred to as "Guardians" and are also citizens of the United States and residents of Wichita County, Texas.

5.   Defendant North Texas State Hospital ("NTSH"), a division of the State of Texas and at all relevant times a recipient of federal financial assistance, may be served with process by serving Secretary of State of the State of Texas, **Service of Process Unit, Rudder Building, at 1019 Brazos, Austin TX. 78701.** Service of said Defendant as described above can be effected by personal delivery.

6.   Defendant Jordan Long is a United States citizen and resides at 2100 Center Dr. Apt 505 Vernon, Wilbarger County, Texas 76384-4839.

7.   Defendant Lanell Edmonds is a United States citizen and resides at 12014 N. 7th Street, Lockett, Wilbarger County, Texas 76384-8311.

8.   Defendant Sarah Carmichael is a United States citizen and resides at 106 Avenue G, Burkburnett, Wichita County, Texas 76354.

## FACTS

9. On October 6, 2010, B.E. was committed to the Vernon Campus of NTSH under provisions of Article 46 B .073, to the Texas Code of Criminal Procedure by order of the Honorable Judge W. Bernard Fudge of the 78th District Court of Wichita County, Texas who entered a Judgement of Incompetency finding that B.M. was incompetent to stand trial because of mental illness.

10. While at the Vernon Campus of NTSH, a psychiatric evaluation was conducted by Linda Odom, D.O., Ph.D. on October 6, 2010 and revealed that B.E. suffered from the following:

| | |
|---|---|
| Axis I: | Impulse Control Disorder Not otherwise Specified (Provisional)<br>Intermittent Explosive Disorder (Provisional)<br>Post Traumatic Stress Disorder (Provisional) |
| Axis II: | Mild Mental Retardation (later updated to Moderate Mental Retardition). |

11. Intermittent explosive disorder is recognized as a mental disorder by the American Psychiatric Association as a condition categorized as an impulse-control disorder by the DSM-IV-TR (Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, Text Revision). The disorder's primary feature is recurrent failure to resist an impulse, drive, or temptation to perform acts that are harmful to the individual or others. The aggressive response is grossly out of proportion to any provocation or precipitating psychosocial stressors, and it cannot be accounted for by other medical, psychiatric, or substance-related disorders.

12. Because of these disabilities, B.M. acts out with uncontrollable aggression, both verbally and physically and was, therefore, confined to a "Multiple Disability Program" ("MDP") at the NTSH Vernon campus on October 6, 2010.

13. Because of these disabilities, B.M. frequently uses inappropriate epithets and threatens violence in order to dispel his anger. B.M.'s angry outbursts caused by these disabilities were

disturbing to both patients and staff who, in some instances, retaliated against B.M.

14.     Closed circuit video cameras inside the Pines Unit show that on November 20, 2010, at 5:30 p.m., B.M. was in the front day room on the south-side of the Pines Unit at the Vernon Campus. As B.M. started walking west down north hallway of the Pines unit, and he was confronted by NTSH staff member, Defendant Long who was exiting a door on the north hallway. Long took an agressive stance and tried to block B.M.'s path down the hall way. B.M. stepped aside and into a doorway in an effort to avoid Long. Without provocation or any reasonable justification, Defendant Long shoved B.M. into a door jamb and then grabbed him in a bear hug. He then picked up B.M. and swung him up over his left shoulder and landed on top of B.M., who landed on his head due to not having the use of his arms for protection because Mr. Long had B.M.'s arms immobilized at the time of the restraint.

15.     As Defendant Long slammed B.M.'s head onto the floor, Defendants Carmichael and Edmonds exited out the south door of the Nurses Station and entered the north hallway. The video shows Edmonds standing at the site of the restraint as it occurred and that Carmichael can be seen running towards Long and B.M. as the restraint is being applied. Carmichael laid on B.M.'s legs Both Long and Carmichael continued to restrain B.M. for several minutes even though B.M. was rendered unconscious and offered no resistance nor struggle.

16.     None of the Defendants went to call any medical personnel immediately after the assault but rather tried various unsuccessful attempts to arouse B.M. At 5:35 p.m., Carmichael told Edmonds to go the nurse's station and page the on duty nurse and also to get a cup of water to splash into B.M.'s face.

17.     At 5:36 p.m., Defendant Long turned B.M. over and held B.M.'s face and head in his lap.

18. At 5:37 p.m., the on duty nurses, RN Mona Faul and LVN Rodney Chavez arrived in the dorm and saw the Defendants standing or kneeling around BM who was on the floor and unconscious.

19. Nurse Faul observed that B.M.'s left eye was red and swollen shut with a walnut size knot on his left cheek, and his jaw was also red. B.M. was in a "ragdoll" posture with breathing and respiration visible with strong and regular pulse but was non responsive.

20. At 5:38 p.m. Nurse Faul asked the staff, Defendants Edmonds, Carmichael, and Long to tell her what had happened. The staff, Edmonds, Carmichael, and Long **did not say a word**.

21. Nurse Faul ordered the staff to turn B.M. on his left side in case he began to vomit. As they turned him to his left side, a large amount of vomit slowly came out of his mouth. Nurse Faul again asked the staff what had happened, and again **no one said a word**.

22. Nurse Faul told Defendant Edmonds to get a flashlight and Carmichael to retrieve some towels. As Fauls began assessing B.M.'s pupils, which were equally round, sluggish but reactive, Nurse Faul's emphatically told the staff "some one better tell me what happened to this man."

23. At 5:41 p.m., NTSH Staff member Daniel Hunter (a collateral witness after the assault) arrived at the location and was told to retrieve some towels.

24. At 5:42 p.m., B.M. began throwing up as he is turned on his left side.

25. At 5:43 p.m. towels were brought by Mr. Hunter.

26. At 5:46 p.m., B.M. appeared to be half way sitting up and attempting to move his arms.

27. At 5:47 p.m., Charge Nurse Jill Streit, RN, arrived at the dorm and Ms. Carmichael brought a pan to Nurse Faul.

28. At 5:48 p.m., Linda Martinez, R.N. arrived on the dorm.

29. At 5:59 p.m., the ambulance personnel arrived and at 6:03 p.m.; they left the unit with B.M. on a stretcher.

30. B.M. was taken to the Wilbarger General Hospital and was then transferred to the United Regional Health Care Hospital in Wichita Falls, Texas where he was admitted into the Intensive Care Unit for a Cerebral Hematoma.

Investigation

31. On November 29, 2010 the Texas Department of Family and Protective Services ("The Department") began an neglect and abuse investigation into the causes of B.M.'s injuries. During the investigations Defendants Long, Carmichael, and Edmonds each gave false and misleading statements to the Department's investigators in a deliberate effort to coverup the hostile and brutal act against B.M. by Defendant Long.

32. In a conscious effort to cover up the true events that caused B.M.'s injuries and to obstruct the State's investigation of the brutal attack of B.M. and to deny him of his right to fairly redress whatever grievances B.M. may have, Defendants Long, Carmichael, and Edmonds conspired to give the Department's investigators false or misleading statements and information.

33. In a deliberate effort to mislead investigators and in the furtherance of the Defendants' conspiracy to coverup the brutal assault on B.M., Defendant Long gave Department Investigators the following false and misleading statement:

- That on 11-20-10 at or about 5:45 p.m. Long came out of the VIP room and saw B.M. running around the corner from the day area due to B.M. getting into an altercation with another peer;

- That B.M. approached Long and long extended his arm in an attempt to slow

       down B.M. to see what was wrong;

- That B.M. made an aggressive move towards Long, swinging his fist towards Long which was why Long restrained B.M;

- That after B.M. swung at Long, he (Long) simply tried to protect himself and placed B.M. in a bear hug restraint and then immediately in a horizontal restraint;

- That Defendant Carmichael was standing at the corner of the nurses station and came and assisted with the restraint by holding B.M.'s legs;

- That B.M. then became unresponsive;

- That Defendant Edmonds put water on B.M.'s face in an effort to revive B.M;

- That Nurse Faul was called and the Defendant assisted B.M. to a sitting position and waited for the nurse to come;

- That when Nurse Faul arrived the Defendants could not immediately explain to her what happened, "mainly because of fear";

- That Long did not know what happened in the day area that caused B.M. to run;

- That Long explained to Nurse Faul what had initially took place minutes after she arrived at the scene;

- That Long told Nurse Faul he (Long) wrapped B.M. up in a "proper" bear hug and took B.M. to the floor and that B.M. hit his head on the floor with the impact causing B.M. to become unresponsive;

- That it took 20-25 minutes for B.M. to be off the unit and into an ambulance;

- That all the medical staff including Long did a "great job" in assisting B.M. and getting B.M. to the ambulance safely.

34. In an effort to mislead investigators and in the furtherance of the Defendants' conspiracy to coverup the brutal assault on B.M., Defendant Edmonds gave Department Investigators the following false and misleading statement:

- That Edmonds was in the nurses station and saw B.M. following an unknown peer "inciting" the peer and that Edmonds had prompted B.M. to leave the peer alone

  and B.M. complied;

- That Edmonds saw B.M. have his fist in the air as if he was going to hit a peer and that Edmonds called out B.M. by name and he "stopped in mid air";

- That Edwards and Carmichael went out of the nurses station to "D" hall and prompted B.M. to stop what he was doing and B.M. took off running down "C" hall;

- That when Edmonds got around the corner of "C" hall Edmonds saw Long having B.M. in a "personal restraint";

- That Edmonds did not see any reason for why Long put B.M. in a personal restraint but when Nurse Faul came over, Long told Nurse Faul the B.M. was "fighting him";

- That Long had B.M. in a restraint and "immediately" followed B.M. to the floor;

- That Edmonds did not see B.M.'s head hit the floor from where she was standing;

- That Carmichael grabbed B.M.'s legs "since it was a restraint";

- That Edmonds went to call for the nurse and Carmichael said to wait because B.M. was not "saying anything";

- That Carmichael asked Edmonds to get some water and stated that "it might help him wake up";

- That Edmonds placed some water on B.M.'s cheek;

- That Edmonds told Long and Carmichael that she needed to call the nurse and did so;

- That Nurse Faul arrived and asked what had happened and that Edmonds responded that "B.M. took off running down "C" hall" and Long interrupted and Long told Faul that B.M. was fighting and he (Long) "followed him to the floor" and Carmichael "got his legs";

35.  In an effort to mislead investigators and in the furtherance of the Defendants' conspiracy to coverup the brutal assault on B.M., Defendant Sara Carmichael gave Department Investigators the following false and misleading statement which is almost word for word identical to

Edmonds' statement;

- That Carmichael and Edmonds were in the nurses Station, and Carmichael heard Edmonds say "Bobby No";

- That Carmichael saw B.M. with his fist in the air about to hit a peer;

- That Carmichael and Edmonds stepped out into the "D" hallway and told B.M. to come to them, and B.M. took off running down hall "C";

- That when Carmichael came around the corner she saw Long holding B.M. in a "personal horizontal restraint on the floor";

- That Carmicheal layed on B.M.'s legs and noticed that the patient (B.M.) "was asleep";

- That Carmichael asked Edmonds to call the nurse and get some water;

- That Carmichael helped Long get B.M. up and continued to talk to him;

- That Carmichael began to "tap on B.M.'s face to get a response";

- That Nurse Faul arrived and asked the staff what had happened and that Carmichael told Nurse Faul that when Carmichael came around the corner B.M. was already in a restraint;

- That Nurse Faul became upset and stated "tell me what happened" and Long did not say anything;

- That Nurse Faul instructed Carmichael to get the vital sign bag from the nurse's station and to take B.M.'s vital signs;

- That Nurse Faul called for an ambulance, and it took 5 to 10 minutes for the ambulance to arrive;

- That B.M.'s injuries were a swolen left eye, which had not turned black; and

- That Carmichael did not see or hear any reason for Long to restrain B.M.

## Causes of Action
## Americans with Disabilities Act, Title II

*North Texas State Hospital:*

36. Plaintiffs re-allege paragraphs 1 to 35, inclusive, with regard to all causes of action.

37. The NTSH is a public entity under Title II of the ADA. *See* 42 U.S.C. § 12132.

38. NTSH receives federal funding and provides safe environment services to its patients who suffer with mental and emotional disabilities. This includes services that protect its patients from the use of excessive force, assaultive, or abusive behavior by NTSH staff and employees.

39. NTSH also provides emergency medical and nursing care services to its patients who are sick or injured while confined in NTSH facilities. As part of that nursing care service, NTSH employees and staff are to provide relevant information to medical care providers including nurses in a timely manner and to assist in the care and treatment of patients requiring medical care or nursing services.

40. NTSH provides administrative grievance services to its patients who suffer with mental and emotional disabilities who are otherwise harmed or abused while confined in NTSH.

## Count I

41. On November 20, 2010 NTSH staff member Defendant Long denied B.M. safe environment services when Long intentionally slammed B.M.'s head onto the floor of the Pines unit at the NTSH Vernon facility because of B.M.'s disabilities discussed above.

## Count II

42. On November 20, 2010 NTSH staff members Defendants Long, Edmonds, and Carmichael, denied B.M. prompt and timely medical care when they refused to provide information to Nurse Faul as she attempted to access and provide medical care to B.M. after Defendant Long slammed B.M.'s head into the floor of the Pines unit at the NTSH Vernon facility because of B.M.'s disabilities discussed above.

Count III

43. NTSH denied B.M. administrative grievance services when staff members Long, Edmonds, and Carmichael conspired to give false and misleading information about how B.M. received his severe head injuries on November 20, 2010 while B.M. was a patient at the Pines unit of the NTSH Vernon facility. Defendants Long, Edmonds, and Carmichael lied to or mislead investigators of the Texas Department of Family and Protective Services knowing that B.M.'s head injuries were so sever that he would likely not remember how his sever head injury occurred and in fact could not give State investigators an accurate account of the events that brought about his injuries.

42 U.S.C. § 1983

*Jordan Long:*

44. Plaintiffs re-allege paragraphs 1 to 35, inclusive, with regard to all causes of action.

45. At all relevant times, Defendant Long as acting under the color of law.

46. Defendant Long violated B.M.'s rights to due process under the Fourteenth Amendment of the United States Constitution when he intentionally slammed B.M.'s head onto the floor using far more force than necessary to effectively control B.M. This outrageous conduct by Long was unprovoked, unreasonable and malicious causing Plaintiff severe pain and suffering and permanent injuries and disabilities.

*Jordan Long, Lanell Edmonds, and Sarah Carmichael:*

47. Plaintiffs re-allege paragraphs 1 to 35, inclusive, with regard to all causes of action.

48. At all relevant times, Defendants Long, Edmonds and Carmichael were acting under the color of law.

49. Defendants Long, Edmonds and Carmichael violated B.M.'s rights to due process under the Fourteenth Amendment of the United States Constitution when they acted with deliberate indifference to the medical needs of B.M. when they (1) unnecessarily delayed calling for medical assistance for B.M. immediately following his injuries, and (2) by remaining silent when Nurse Faul asked them what caused B.M.'s injuries thus placing B.M. "in a medical risk by Ms. Faul not able to make a professional assessment of B.M.'s injuries"[1]

50. Defendants Long, Edmonds and Carmichael (1) violated B.M.'s rights to due process under the Fourteenth Amendment of the United States Constitution when they conspired to give false and misleading statements to TDFPS investigators in an effort to coverup the actual events which caused B.M. severe injuries.

51. And Defendants Long, Edmonds, and Carmichael acted with deliberate indifference to B.M.'s First Amendment right to fairly redress his grievances by knowingly lying and giving false and misleading accounts of B.M. injuries to State investigators, knowing that B.M.'s head injuries were so sever that he would likely not remember how his sever head injury occurred and in fact B.M. could not give State investigators an accurate account of the events. But for the closed circuit video cameras recording B.M. would not have been able to redress his grievances and the true factual account of this brutal act would have been covered-up by these Defendants and they would likely have gone unpunished.

*Monetary Relief*

---

[1] Conclusion drawn by TDFPS investigators. See *Tex. Dept. Of Fam. & Protect. Ser.* Rept. Case # 384161574 at p.13, Dec. 3, 2010.

52. Plaintiff is entitled to recover and hereby requests the award of the following damages within the jurisdictional limits of this court for B.M.'s injuries:

    A.    Physical and mental pain and suffering B.M. experienced in the past and in the future; and

    B.    Exemplary damages against Sheriff Duke and Dr. Bolin;

*Attorney Fees and Cost*

53. Plaintiff is also entitled to recover and hereby requests an award of reasonable attorneys' fees and costs of court.

### PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that upon final hearing, Plaintiff has the following relief:

1. Recovery of damages consistent with the allegations of this complaint;
2. Award exemplary damages against Defendants Long, Edmonds and Carmichael as allowed by law;
3. Recovery of reasonable attorneys fees for the preparation and trial of this cause of action, and for its appeal, if required;
4. Recovery of costs herein expended;
5. Prejudgment interest and post judgment interest al permitted by law.
6. Such other and further relief to which plaintiffs may be entitled at law or in equity.

Respectfully submitted

By: s/s *Rick Bunch*
Rickey G. Bunch

              Bar No. 00792381
              2110 Hiawatha Blvd.
              Wichita Falls, Texas 76309
              Telephone: (940) 322-6611
              Facsmile: (212) 954-5533
              rickbunch@sw.rr.com

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Donald Henry & Lisa Nell Henry as Guardians of B.M. an adult ward

## DEFENDANTS
North Texas State Hospital, Jordan Long, Lanell Edmonds,

**(b)** County of Residence of First Listed Plaintiff  Wichita
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Rickey G. Bunch, 2110 Hiawatha Blvd. Wichita Falls, Tx. 76309
940-322-6611

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1983, 1988, & 12131
Brief description of cause:
Civil rights violation under the ADA - Excessive force First & Fourteenth Amendment violation by State actors

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) PENDING OR CLOSED:
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 11/15/2012
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # WF001539  AMOUNT 350.00  APPLYING IFP ___  JUDGE O  MAG. JUDGE KA